UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-20899-cr-Zloch

UNITED STATES OF AMERICA

v.

MIGUEL BRANDO PENARANDA DIAZ,

Defendant.
_____/

PLEA AGREEMENT

The United States of America and **MIGUEL BRANDO PENARANDA DIAZ** ("Defendant") enter into the following agreement:

1. The Defendant agrees to plead guilty to Count 1 of the Indictment, charging him with conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h).

2. The Defendant is aware that the sentence will be imposed by the Court after considering the Federal Sentencing Guidelines and Policy Statements. The Defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a Pre-Sentence Investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The Defendant is also aware that, under certain circumstances, the Court may depart and/or vary from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The Defendant is further aware and understands that while the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, it is

not bound to impose that sentence; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the advisory range. Knowing these facts, the Defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the Defendant may not withdraw the plea as a result of the sentence imposed.

3. The Defendant also understands and acknowledges that as to Count 1 of the Indictment, the Court may impose a statutory maximum term of imprisonment of up to 20 years, followed by a term of supervised release of up to 3 years. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $500,000.

4. The Defendant further understand and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on the Defendant. The Defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If the Defendant claims to be financially unable to pay the special assessment, the Defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the Defendant's failure to pay.

5. The Office of the United States Attorney for the Southern District of Florida ("Office") reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offense committed, as well as concerning the Defendant and the Defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quantity of punishment.

6. The Defendant is aware that the sentence has not yet been determined by the Court.

The Defendant recognizes that any estimate of the probable advisory sentencing range or sentence that the Defendant may receive, whether that estimate comes from the Defendant's attorney, the government, or the probation office is a prediction, not a promise, and is not binding on the probation office or the Court.  The Defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court, and the Court may disregard the recommendation in its entirety.  The Defendant again understands and acknowledges that he may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the Defendant, the government, or a recommendation made jointly by both the Defendant and the government.

7. The United States agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to Defendant's offenses, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon Defendant's recognition and affirmative and timely acceptance of personal responsibility.  If at the time of sentencing the Defendant's offense level is determined to be 16 or greater, the government will request an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines. The Office further agrees to recommend that the Defendant be sentenced at the low end of the guideline range, as that range is determined by the Court. However, the government will not be required to make these sentencing recommendations or any other recommendation set forth in this agreement if the defendant: (1) fails or refuses to make full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state

or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

8. The defendant agrees that he/she shall cooperate fully with this Office by: (a) providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other Court proceeding; (b) appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office; and (c) if requested by this Office, working in an undercover role under the supervision of, and in compliance with, law enforcement officers and agents. In addition, the defendant agrees that he will not protect any person or entity through false information or omission, that he will not falsely implicate any person or entity, and that he that he will not commit any further crimes.

9. This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make that cooperation, or lack thereof, known to the Court at the time of sentencing. If in the sole and unreviewable judgment of this Office the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the Court's downward departure from the advisory sentencing range calculated under the Sentencing Guidelines and/or any applicable minimum mandatory sentence, this Office may make a motion prior to sentencing pursuant to Section 5K1.1 of the Sentencing Guidelines and/or Title 18, United States Code, Section 3553(e), or subsequent to sentencing pursuant to Rule 35 of the Federal Rules of Criminal Procedure, informing the Court that the defendant has provided substantial assistance and recommending that the defendant's sentence be reduced. The defendant understands and agrees, however, that nothing in this agreement requires this Office to file any such motions, and that this Office's assessment of the quality and significance of the

4

defendant's cooperation shall be binding as it relates to the appropriateness of this Office's filing or non-filing of a motion to reduce sentence.

10. The defendant understands and acknowledges that the Court is under no obligation to grant a motion for reduction of sentence filed by this Office. In addition, the defendant further understands and acknowledges that the Court is under no obligation of any type to reduce the defendant's sentence because of the defendant's cooperation.

11. This Office and the Defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

Role in the offense: That the Defendant should receive a two-level decrease as a participant in the offense whose role was minor, pursuant to Section 3B1.2 (b) of the Sentencing Guidelines.

Enhancements: That no other sentencing enhancement applies to the Defendant, including that related for the business of money laundering or sophisticated laundering.

Adjusted Offense Level: That the applicable adjusted offense level under all of the circumstances of the offense committed by the Defendant is Level 28 (before a three-level reduction for timely acceptance of responsibility): base offense level of 8 under §2S1.1(a)(2); 12 level increase for the amount of laundered funds ($250,000) under §2S1.1(a)(2) and §2B1.1(b)(1)(F); 6-level increase under §2S1.1(b)(1) because subsection (a)(2) applies and the defendant knew or believed that any of the laundered funds were the proceeds of, or were intended to promote an offense involving the manufacture, importation, or distribution of a controlled substance; and a 2-level increase under §2S1.1(b)(2)(b) because the conviction is under 18 U.S.C. § 1956.

5

Credit for Time in Custody in Spain: The Office and the Defendant agree to recommend to the Court that the Defendant should be credited with the time he was held in custody in Spain, that is, from May 6, 2014, until the date of his extradition on March 13, 2015.

12. In the event that for any reason the Defendant does not plead guilty or otherwise fully comply with the any of the provisions of this agreement, the Defendant agrees and understands that he thereby waives any protection afforded by Section 1B1.8(a) of the United States Sentencing Guidelines as well as any protection afforded by Federal Rule of Criminal Procedure 11(e)(6). The Defendant further understands that in the event that for any reason the he does not plead guilty, any statements made previously by the Defendant under this agreement or as part of any plea discussions or as part of any attempted or actual cooperation with the government, or pursuant to a previously executed Kastigar letter will be fully admissible against his in any civil or criminal proceedings, notwithstanding any prior agreement with the government.

13. The Defendant is aware that Title 18, United States Code, Section 3742, affords the Defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the Defendant hereby waives his right to appeal any sentence imposed, including any restitution or community service order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure or variance from the advisory guideline range that the Court establishes at sentencing. The Defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b). However, if the United States appeals the Defendant's sentence, the Defendant shall be released from the above waiver of appellate rights. The Defendant further agrees, together with the United States, to request that the

Court enter a specific finding that the Defendant's waiver of his right to appeal was knowing and voluntary.

14. This Office and the Defendant stipulate to and agree not to contest the following facts, and stipulate that such facts, in accordance with Federal Rule of Criminal Procedure 11(b)(3), provide a sufficient factual basis for the plea of guilty in this case.

If this case were to go to trial, the government would prove beyond a reasonable doubt the following:

The Defendant is guilty of the offense charged in Counts 1 of the Indictment, that is, conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h).

Jaime Tamayo Lopez (Tamayo) is a Colombian citizen and high-ranking member of a Medellin-based criminal organization that engages primarily in narcotics trafficking and related money laundering, bribery, extortion, and murder. Tamayo has been identified as being responsible for coordinating the transportation of tons of cocaine from laboratories in Peru and Colombia to North America and Europe.

While in custody in Colombia on money laundering charges on July 13, 2013, Tamayo provided a voluntary, post-<u>Miranda</u> statement to law enforcement. Tamayo stated that "Henry Hernandez," alias "Buffalo" and "Alex," identified by law enforcement as Alexander Herrera Nariño, met with Tamayo in July 2012 in Peru to discuss a cocaine deal – 500 kilograms to be sent from Peru to Portugal. Tamayo agreed to participate. Herrera told Tamayo that a funder of the shipment was "Larry," whom Tamayo knew to be the Defendant. Tamayo said that Herrera explained that the Defendant was going to supply the Euro equivalent of $2.3 million U.S. dollars to pay for the production, concealment, and shipment of the cocaine. (Tamayo also admitted that

he had arranged for a shipment of 125 kilograms of cocaine from Peru that was seized in Houston, Texas on January 2, 2013.)

On or about October 4, 2012, the Defendant participated in the related laundering of about $1.1 million which had been generated through illegal drug trafficking. $250,000 was wired to bank accounts in the United States, including two banks in Doral, Florida, in the Southern District of Florida. There is no evidence that the Defendant was otherwise directly connected to these accounts. The remaining $850,000 was transported in cash from Amsterdam, the Netherlands to Lima, Peru by a confidential source working with the Drug Enforcement Administration (DEA).

On or about October 5, 2012, a DEA confidential source (CS) met with Herrera, Aprea, and the Defendant in Peru, at which time the Defendant discussed the delivery of the $850,000 and drug trafficking with the CS.

On or about October 9, 2012, the Defendant was intercepted on a judicially authorized wiretap in Peru speaking with Herrera, and other unidentified individuals in Spain and the Netherlands, about the shipment of cocaine to Europe.

After the Defendant was arrested on or about May 6, 2014 in Spain, he admitted his participation in the money laundering conspiracy.

This conduct took place both in the Southern District of Florida, as well as outside of the Southern District of Florida, causing effects in the Southern District of Florida.

15. The content of this Agreement is the entire agreement and understanding between the United States and the Defendant. There are no other agreements, promises, representations,

or understandings, and neither party relies upon any other agreements, promises, representations, or understandings in entering into this Agreement.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 6/2/15.     By: _____
                      Robert T. Watson
                      Assistant United States Attorney

Date: 6/2/2015          _____
                        Ivan Mercado, Esq.
                        Attorney for Miguel Penaranda Diaz

Date: 6/2/2015          _____
                        Miguel Penaranda Diaz
                        Defendant