```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                     FORT LAUDERDALE DIVISION
                       CASE NO.  13-cr-20899-WJZ
 3

 4

 5   UNITED STATES OF AMERICA,

 6                 Plaintiff,

 7        vs.

                                      Fort Lauderdale, Florida
 8                                    September 2, 2015
 9   MIGUEL BRANDO PENARANDA DIAZ,    10:00-10:30 a.m.
                                      Pages 1-22
10                 Defendant.
     _____

11                   TRANSCRIPT OF SENTENCING HEARING
12           BEFORE THE HONORABLE WILLIAM J. ZLOCH
                  UNITED STATES DISTRICT JUDGE
13

14   APPEARANCES:

15   FOR THE PLAINTIFF:
                           United States Attorney's Office
16                         BY:  ROBERT WATSON,  A.U.S.A.
                           99 N.E. 4th Street
17                         Miami,  Florida 33132

18
     FOR THE DEFENDANT:
19                         Mercado & Rengel
                           BY:  IVAN MERCADO, ESQ.
20                         201 South Biscayne Boulevard
                           28th Floor
21                         Miami, Florida 33131

22
     REPORTED BY:          DAWN M. WHITMARSH, RPR
23                         Official Court Reporter
                           400 N. Miami Avenue, 10S03
24                         Miami, Florida  33128
                           Telephone:  305-523-5598
25
```

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

```
1                    P-R-O-C-E-E-D-I-N-G-S
2           THE COURT:  Good morning.  Please be seated.
3           Calling case number 13-20899-criminal.
4           Counsel, would you note your appearances, please.
5           MR. WATSON:  Good morning, Your Honor.  Robert
6   Watson for the United States.
7           THE COURT:  Good morning.
8           MR. MERCADO:  Good morning, Your Honor.  Ivan
9   Mercado on behalf of Miguel Penaranda Diaz, the defendant.
10          THE COURT:  Good morning, counsel.
11          Let the record reflect that Miguel Brando Penaranda
12  Diaz is present and in the courtroom.
13          Can I have the representative from the Probation
14  Office note her appearance.
15          THE PROBATION OFFICER:  Good morning, Your Honor.
16  Alma Martinez on behalf of Probation.
17          THE COURT:  Good morning.
18          And can I have the court interpreters note their
19  appearances, please.
20          THE INTERPRETER:  Good morning, Your Honor.  Susanna
21  Starosta.
22          THE INTERPRETER:  Good morning, Joelle Haspil.
23          THE COURT:  Good morning.
24          Mr. Mercado, are you privately retained?
25          MR. MERCADO:  Yes, I am, Your Honor.
```

1          THE COURT:  Thank you.

2          We're here for sentencing.  Mr. Mercado, have you

3    read, in its entirety, the presentence report and the addendum

4    to it?

5          MR. MERCADO:  Yes, I have, Your Honor.

6          THE COURT:  And have you discussed those papers

7    fully with your client?

8          MR. MERCADO:  Yes, I have, Your Honor.

9          THE COURT:  Other than what's been filed in writing

10   titled Defendant's Objections to Presentence Investigation

11   Report, and your sentencing memorandum, are there any

12   objections, any additional objections or any motions from the

13   defense?

14         MR. MERCADO:  No, Your Honor.  We have no additional

15   objections or motions to be made at this time.

16         THE COURT:  Thank you.

17         Mr. Penaranda Diaz, have you had read to you, in its

18   entirety, the presentence report and the addendum to it?

19         THE DEFENDANT:  (Through Interpreter) Yes, sir.

20         THE COURT:  And have you discussed those papers

21   fully with your lawyer?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Other than what Mr. Mercado has filed in

24   writing on your behalf, do you have any additional objections

25   or any motions to anything contained in the presentence

1    report?

2         THE DEFENDANT:  No, sir.

3         THE COURT:  All right.  Are there any from the

4    government?

5         MR. WATSON:  No additional objections, Your Honor.

6    The government is in agreement with the calculation that the

7    defense proposes, and the government, in addition, would move

8    ore tenus under section 5K for a 10 percent reduction for the

9    cooperation the defendant has provided to the government in

10   other investigations to date.

11        THE COURT:  Well, are you making an ore tenus 5K1

12   motion?

13        MR. WATSON:  Yes, Your Honor.

14        THE COURT:  But with respect to the objections, are

15   you saying that you agree with the objections?

16        MR. WATSON:  Yes, Your Honor.  The government stands

17   by the plea agreement that we entered into and the

18   calculations that were set forth therein, and we agree with

19   the defendant's calculation that when all of the enhancements

20   and reductions for acceptance and role are taken into

21   consideration, that the total offense level for this defendant

22   should be 23.  And that is what the defense has set forth in

23   page five of docket entry 50, the defendant's sentencing

24   memorandum.

25        THE COURT:  But the plea agreement is not binding on

5

1   the court.

2        MR. WATSON:  Yes.  I understand, Your Honor.  But

3   the government agrees with the defense calculations and it

4   agrees with the calculations that the parties agreed upon that

5   are set forth in the plea agreement.  And of course, I would

6   be happy to explain the reasons why we believe those

7   calculations are correct if the court --

8        THE COURT:  Well, go right ahead and do that and use

9   the podium, please.

10        MR. WATSON:  Your Honor, the government agrees with

11   the defense that the correct guideline to be used for this

12   defendant for the conduct charged is 2S1.1A2, because although

13   there was a reference in the factual proffer to a shipment of

14   cocaine from South America to Europe, and a statement for --

15   of 500 kilograms, and a statement by a co-conspirator that the

16   defendant had been involved in that load, the government is

17   not prepared to prove at this time by a preponderance of the

18   evidence that in fact the defendant was involved in arranging

19   that load.

20        If the court recalls, at the time of the change of

21   plea, the defense specifically clarified the meaning of that

22   language in the factual proffer, and the court questioned the

23   defendant about that and the defense stated that they did not

24   disagree that the government would be able to prove that the

25   co-conspirator made that statement, but they did not agree

1   that in fact the defendant was involved in a 500 kilogram

2   load.

3          The co-conspirators are awaiting extradition so at

4   this time, the government has no way to have those witnesses

5   here to provide testimony.  The statements were made to

6   Colombian law enforcement.  We don't have those agents here in

7   order to testify.

8          So after the parties negotiated extensively, we did

9   agree upon the calculations in the plea agreement.  The

10  government believed that was in the best interest of the

11  government, and the defendant was willing to admit that he --

12  was involved in money laundering, that that money was the

13  proceeds of illegal activity, and that it was designed to be

14  used to further drug trafficking and therefore, there was a

15  sufficient basis for him to enter a guilty plea to the charge

16  in the indictment.

17         But again, because the government is not in a

18  position to prove that under 2S1.1A1 that the defendant

19  committed the underlying offense of the drug trafficking

20  pursuant to application note 2B, subsection A1 should not

21  apply; but rather subsection A2 should apply and therefore,

22  instead of starting out with the much higher base offense

23  level included in the presentence investigation report, the

24  government submits that the base offense level of eight set

25  forth in 2S1.1A2 is appropriate.

7

1          And then, because of the amount of funds laundered,

2   $250,000, there is a 12 point increase under 2S1.1A2 which

3   takes us to 20.  Then there's a six level increase under

4   2S1.1B1 because subsection A2 applies, and the defendant knew

5   that the laundered funds were intended to promote a drug

6   trafficking offense.

7          And then there's an additional two level increase

8   under 2S1.1B2B, because this is a conviction under Title 18

9   United States Code section 1956.  So that takes us to a level

10  28.

11         And then we have a three level decrease for

12  acceptance of responsibility which takes us to a level 25.

13         And then the government agreed that the defendant

14  should receive a two level decrease as a minor participant in

15  the money laundering offense.  And the government took that

16  position because essentially, the defendant's role in the

17  money laundering conspiracy was to serve as a liaison between

18  those who were shipping drugs from South America to Europe and

19  those who were selling the drugs in Europe.  And of course,

20  those selling the drugs in Europe needed to transport the

21  proceeds back to the manufacturers in South America, and the

22  defendant's role was to serve as a liaison between those two

23  parties and put them in touch.  But, for example, he was not

24  physically present when funds were dropped off and possession

25  was transferred in Europe. He did not direct the wiring of

1    specific funds.

2              So for those reasons, the government submits that

3    his role in the offense was minor compared to his

4    co-conspirators who were either physically present or actually

5    directed the transfer of the funds or the physical

6    transportation of those funds by airplane from Europe back to

7    South America.

8              So with a two point reduction for role, that would

9    yield a total offense level of 23 which is, as I stated, what

10   the defense advocates for on page five of its memorandum and

11   what the parties calculated in the plea agreement.

12             THE COURT:  With a criminal history category of one?

13             MR. WATSON:  Yes, Your Honor.

14             THE COURT:  Does the defense agree with that?

15             MR. MERCADO:  Completely.  Yes, Your Honor.  I would

16   add nothing.

17             THE COURT:  All right.  Madame Probation Officer,

18   I'll accept that agreement.

19                 What does that do to the guideline computation

20   and range?

21             THE PROBATION OFFICER:  Yes, Your Honor.  The total

22   offense level would then be 23.  The defendant has a criminal

23   history category of one.  The advisory guideline imprisonment

24   range is 46 to 57 months.  He is ineligible for probation.

25   The supervised release term is one to three years.  The fine

1    range is $10,000 to $500,000.  Restitution is not applicable.

2    And there is a special assessment of $100.

3              THE COURT:  All right.  Thank you.

4              Does the defense agree with that?

5              MR. MERCADO:  Yes, Your Honor, I do.

6              THE COURT:  Does the government?

7              MR. WATSON:  Yes, Your Honor.

8              THE COURT:  All right.  Let me hear from the

9    government on its ore tenus 5K motion.

10             MR. WATSON:  Your Honor, since the time the

11   defendant was extradited to the Southern District of Florida

12   from Spain, he has, from the very beginning, cooperated with

13   the government.  He has admitted his responsibility for his

14   conduct and he has met with government agents both from the

15   DEA and Homeland Security on at least two, and I believe

16   three, occasions to provide information regarding ongoing

17   investigations.  Those investigations are, as I said, ongoing.

18   There have not been any charges filed against any other

19   individuals yet, but based upon the cooperation he's provided

20   so far, the government would recommend a 10 percent reduction

21   at this time, and we expect that if his cooperation continues,

22   there's a very good chance that the government would return

23   and ask Your Honor further reduce the defendant's sentence

24   pursuant to Rule 35.

25             THE COURT:  All right.  Thank you.

```
 1          Any additional comments just on the motion, the 5K1
 2    motion, Mr. Mercado?
 3          MR. MERCADO:  No, Your Honor.  I'll reserve those
 4    for my arguments with regards to the final sentence.
 5          THE COURT:  All right.  Mr. Penaranda Diaz, if
 6    you'll step up to the podium.
 7          Miguel Brando Penaranda Diaz, you now being again
 8    before this court, accompanied by your lawyer, and you
 9    previously having pled guilty to the offense charged in Count
10    1 of the indictment of the United States of America versus
11    Miguel Brando Penaranda Diaz, case number 13-20899-cr-Zloch in
12    the United States District Court for the Southern District of
13    Florida, and the court having previously adjudged you guilty
14    of the offense charged in Count 1 of that indictment, do you
15    or does anyone on your behalf now have any legal reason to
16    show why the sentence of the law should not be pronounced upon
17    you?  Any legal reason?
18          THE DEFENDANT:  No.  No, sir.
19          THE COURT:  No legal reason having been shown as to
20    why sentence should not now be imposed, the court will receive
21    whatever information or evidence may be offered in extenuation
22    or in mitigation of punishment or which is otherwise relevant
23    to the sentence to be imposed.
24          Who would like to go first?  Mr. Mercado?
25          MR. MERCADO:  Yes, Your Honor.  At this time, I'll
```

1   address the court.

2          Your Honor, with regards to Mr. Penaranda's personal

3   situation, he's a resident, a lawful resident of Spain.  He,

4   in fact, has not been in the United States.  He was extradited

5   from Spain.

6          His family, his children, two small children, twins

7   who are four years old, and a daughter who is nine years old,

8   reside in Spain with their mother.

9          This is a very difficult situation for his family

10  which, Your Honor, I think, enhances any time that this court

11  and the difficulties involved in servicing a sentence so far

12  away from his loved ones.  I think in mitigation, that should

13  be a factor considered by the court.  And that's not to

14  diminish his culpability or to exculpate him in any way.

15          THE COURT:  Why didn't he think of all of that

16  before he engaged in this criminal conduct?

17          MR. MERCADO:  I agree, Your Honor.  And at his age

18  --

19          THE COURT:  Well then, why didn't he?  I know you

20  agree with me, but tell me why he didn't and why he should

21  receive a break for that now since it obviously didn't bother

22  him when he engaged in the criminal conduct?

23          MR. MERCADO:  I don't disagree with the court, Your

24  Honor.  I think that every defendant had or any defendant who

25  gives thought prior to committing a crime would not commit the

```
 1  crime.  If they knew all of the consequences and knew that
 2  they would find themselves shackled in front of their
 3  families.  And I don't mean to argue with the court.
 4         THE COURT:  Well, would you prefer that the Marshals
 5  unshackle him?
 6         MR. MERCADO:  No, I would not, Your Honor.
 7         THE COURT:  Do you think they're doing that because
 8  they don't have anything else better to do?
 9         MR. MERCADO:  I only mention it by way of
10  mitigation, Your Honor.
11         THE COURT:  Go ahead.
12         MR. MERCADO:  Your Honor, additionally, I think
13  given the defendant's age, there is very little likelihood
14  that he would reoffend.  And I think that might be a factor
15  the court could consider when imposing a sentence on this
16  defendant.
17         Additionally, Your Honor, he is a defendant who has
18  shown remorse for his crimes by cooperating with the
19  government.  This is not a defendant that does it without
20  personal peril.  He's not a defendant that talks about
21  anonymous people or third parties or people who have been paid
22  in order to be set up, in order to -- he was the subject or
23  the target of an assassination attempt.  He was in a
24  restaurant in Colombia, individuals walked into that
25  restaurant.  Through some miracle of whatever divine force was
```

1  looking out for him, he went to the bathroom at that time.

2  His friend was shot to death sitting at the table that he had

3  just left minutes before.

4        This hit, this attempt on his life, was ordered by

5  the very people who are involved in this conspiracy.  The very

6  people that he has been cooperating against.  And he's not met

7  with the government two or three times, he's met with the

8  government at least six times and he's also met with the

9  government on unrelated cases.  So he's not just talked about

10  the defendants in his own case, he's talked about people in

11  unrelated cases.

12        So this is not a defendant who has not fully

13  cooperated, Your Honor.  He has, and he's evidenced his own

14  willingness, albeit for purposes of getting a 5K1 credit.  But

15  he could only go -- he could have only gone to a certain point

16  and stopped.  But rather than do that, he's been willing to

17  meet with other prosecutors about other cases.

18        So I would suggest, Your Honor, that a greater

19  reduction than 10 percent be given for the 5K1, and that some

20  consideration be given to his very difficult family situation.

21  And I understand the court's position.

22        THE COURT:  All right.  Thank you, sir.

23        MR. MERCADO:  I would suggest a 50 percent

24  reduction.

25        THE COURT:  Mr. Penaranda Diaz, what would you like

14

1    to say?

2           THE DEFENDANT:  First and foremost, I'd like to

3    apologize to you who represent the government of the United

4    States.  And I'd like to apologize to my family whom I know

5    have suffered tremendously.  And that's it.  And thank you

6    very much to Mr. Prosecutor.

7           THE COURT:  All right.  Thank you, Mr. Penaranda.

8           MR. MERCADO:  Your Honor, if the court would indulge

9    me, and I ask the court's permission, whether Mr. Penaranda's

10   wife, Paula Rodriguez could briefly address the court.

11          THE COURT:  She may.  Ask her to step up.

12          MR. MERCADO:  Thank you very much, Your Honor.

13          THE COURT:  Good morning.

14          MR. MERCADO:  Ma'am, could you please state your

15   name for the record?

16          THE WITNESS:  (Through Interpreter) My name is

17   Miriam Paola Rodriguez Orozco.

18          THE COURT:  How do you spell the last name?

19          THE WITNESS:  O R O Z C O.

20          THE COURT:  Good morning.

21          THE WITNESS:  Good morning.

22          MR. MERCADO:  Go ahead, ma'am.  What did you want to

23   tell the court?

24          THE WITNESS:  Honorable Judge, I'd like to simply

25   ask you to give us the opportunity to rehabilitate our life,

```
 1   not for my husband's sake, but rather for my children.
 2   Because the time that you're planning to impose on him as a
 3   sentence will be eternal for us, since we do not live here in
 4   the United States, we live in Spain.  And our financial
 5   situation would not allow me to come here to visit him
 6   frequently.  Matter of fact, being here today has been a
 7   tremendous sacrifice.  And I simply want you to give us the
 8   opportunity for him to come back home so that he may have the
 9   opportunity to see his children grow and to be near us.  Thank
10   you.
11            THE COURT:  Thank you.  Anything else from the
12   defense, Mr. Mercado?
13            MR. MERCADO:  Nothing, Your Honor.  I thank you very
14   much for indulging us on that.
15            THE COURT:  What say the United States?
16            MR. WATSON:  Your Honor, based upon the applicable
17   guideline range of 46 to 57 months, and the government's
18   agreement in the plea agreement to recommend the low end, the
19   government's recommendation would be 46 months before the
20   recommendation for cooperation.  If the court were to agree
21   with the government's recommendation of 10 percent, that would
22   be 4.6 months reduction.  If we round that to five months and
23   take that off of the 46, we would be at 41 months.
24            So the government's recommendation would be 41
25   months imprisonment.  The maximum term of supervised release
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    of three years, nonreporting, if the defendant, as expected,

2    is deported from the United States upon the completion of his

3    term of imprisonment.  Pursuant to the presentence

4    investigation report, the defendant is not able to pay a fine,

5    so the government does not seek a fine, and the $100 special

6    assessment.

7            THE COURT:  What does the government say about the

8    defendant's request to serve the term of imprisonment in

9    Spain?

10           MR. WATSON:  The government submits that the term of

11   imprisonment should be served here in the United States,

12   unless a request is made through a process with which I'm not

13   extremely familiar, but I understand in extreme cases the

14   executive branch may approve a request for a defendant to

15   serve some of his term of imprisonment in his country of

16   citizenship or residency if that country provides certain

17   guarantees to the United States as to the amount of time that

18   will be served.

19           But at this point, the government would recommend

20   that he be committed initially to serving his term of

21   imprisonment in the United States.

22           THE COURT:  All right.  Thank you.

23           Mr. Penaranda, if you'll step up to the podium.

24           The court being fully informed of the facts and

25   circumstances surrounding the crime, and no legal reason

1   having been shown as to why sentence should not now be

2   imposed:

3           After consideration of statements by all parties and

4   a complete review of the entire presentence report, which

5   contains the advisory guideline computation, and range which

6   this court has considered, the court has also considered all

7   of the statutory factors as set forth in 18 USC Section

8   3553(a).

9           Further, it is the finding of the court that

10  Mr. Penaranda is not able to pay a fine, therefore no fine

11  shall be imposed.

12          Accordingly, pursuant to the Sentencing Reform Act

13  of 1984, it is the judgment of the court and the sentence of

14  the law that Mr. Miguel Brando Penaranda Diaz is hereby

15  committed to the custody of the United States Bureau of

16  Prisons to be imprisoned for a term of 39 months as to Count 1

17  of the indictment.

18          Upon release from imprisonment, the defendant shall

19  be placed on supervised release for a term of three years.

20  Within 72 hours of release, he shall report in person to the

21  probation office in the district to which he is released.

22  While on supervised release, he shall not commit any crimes,

23  he shall be prohibited from possessing a firearm or other

24  dangerous devices, he shall not possess a controlled

25  substance, he shall cooperate in the collection of DNA, he

1     shall comply with the standard conditions of supervised

2     release that have been adopted by this court including the

3     following special conditions:

4            One, surrendering to immigration for removal after

5     imprisonment; and two, cooperating with immigration during

6     removal proceedings as noted more specifically in part G of

7     the presentence report.

8            It is further ordered that Mr. Penaranda shall pay

9     immediately to the United States a special assessment of $100.

10           Does that cover everything, Madame Probation

11    Officer?

12           THE PROBATION OFFICER:  Yes, it does, Your Honor.

13           THE COURT:  Except as otherwise modified here this

14    morning by the court accepting the agreement between the

15    defense and the government, the court otherwise adopts the

16    factual findings and advisory guideline computation.  The

17    total offense level, the criminal history category, the

18    imprisonment range and the supervised release range as revised

19    here this morning.

20           MR. MERCADO:  Your Honor, I just have --

21           THE COURT:  No fine has been imposed for the reasons

22    previously stated.  Restitution is not applicable.  The

23    sentence varies from the advisory guideline range based upon

24    the government's ore tenus motion, ore tenus 5K1 motion, based

25    on the defendant's substantial assistance.

1    The court finds that Mr. Penaranda thus far has

2  rendered substantial assistance to the government and the

3  government concedes that point; therefore, the basis for the

4  court granting the government's 5K1 motion.

5    Does the defense have any objection to any of the

6  findings of facts or conclusions of law made by the court here

7  this morning?

8    MR. MERCADO:  None, Your Honor.

9    THE COURT:  Mr. Penaranda, do you have any?

10    THE DEFENDANT:  No, sir.

11    THE COURT:  Any from the government?

12    MR. WATSON:  No, Your Honor.

13    THE COURT:  Does the defense have any objection to

14  the manner or procedure which the sentence has been imposed or

15  that this hearing has been conducted?

16    MR. MERCADO:  None, Your Honor.

17    THE COURT:  Mr. Penaranda, do you have any?

18    THE DEFENDANT:  No, sir.

19    THE COURT:  Any from the government?

20    MR. WATSON:  No, Your Honor.

21    THE COURT:  Mr. Penaranda, the court now informs

22  you, sir, that you have 14 days from today within which to

23  appeal the sentence imposed.  Your failure to appeal within

24  the 14 day time period shall constitute a waiver of your right

25  to appeal.  If you are without funds with which to retain a

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1   lawyer to assist you in any appeal, the court would appoint a

2   lawyer for you upon a showing that you are indigent and unable

3   to afford a lawyer.

4           Anything else, Mr. Mercado?

5           MR. MERCADO:  Yes, Your Honor.  There are just a

6   couple of housekeeping matters.

7           I believe that the probation department needs to be

8   instructed to change the PSR to reflect the calculations made

9   today, otherwise he'll go to BOP with the erroneous

10  calculations.

11          THE COURT:  I'm sure that probation will be doing

12  that without my instruction.

13          MR. MERCADO:  Thank you, Your Honor.

14          The other issue would be that if the government

15  could reflect 311 days for credit for time spent in custody in

16  Spain.

17          THE COURT:  I don't have the authority to get into

18  credit time served.  He's entitled to receive credit for time

19  served with respect to all the time that he's been in federal

20  custody.  But that's not an issue for the court to resolve at

21  this point in time.

22          Anything else from the defense?

23          MR. MERCADO:  Your Honor, I would ask for a

24  recommendation that the defendant serve his sentence in South

25  Florida.

1          THE COURT:  Anything else?

2          MR. MERCADO:  Additionally, I would ask that the

3   court recommend to the Marshal's office that he be returned to

4   the Federal Detention Center at Miami as soon as practical,

5   simply because --

6          THE COURT:  I don't have the authority to direct the

7   Marshal to do that.

8          MR. MERCADO:  We just ask for a recommendation from

9   the court.

10         THE COURT:  All right.  Anything else?

11         MR. MERCADO:  That's it, Your Honor.

12         THE COURT:  All right.  The court recommends a

13  federal facility in South Florida, and if the Marshal can get

14  him back to Miami today, then so be it.  If they can't, that's

15  beyond my control.  I don't have the authority to direct the

16  Marshal to do anything other than to have a defendant here in

17  the courtroom.

18         Anything else from the defense?

19         MR. MERCADO:  Nothing further, Your Honor.

20         THE COURT:  From the government?

21         MR. WATSON:  No, Your Honor.  Thank you.

22         THE COURT:  All right.  Mr. Penaranda, you're

23  remanded to the custody of the United States Marshal.  Court's

24  in recess.  Thank you, counsel.  Thank you, Madame Probation

25  Officer.  Thank you, Madame Interpreters.

```
1                 (PROCEEDINGS CONCLUDED)
                        *  *  *  *  *
2

                        C E R T I F I C A T E
3    I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
4

     November 5, 2015       /s/ Dawn M. Whitmarsh
5    Date                   DAWN M. WHITMARSH, RPR

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**